IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DEEP SOUTH VEGETABLES, INC., | Case No. 7:23-cv-00069-WLS |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| J & J PRODUCE, INC. | |
| Defendant/Counterclaim Plaintiff. | |

## STIPULATION AND PROPOSED ORDER SUBSTITUTING DEFENDANT/COUNTERCLAIM PLAINTIFF

Pursuant to Fed.R.Civ.P. 25(c), PLAINTIFF/COUNTERCLAIM DEFENDANT DEEP SOUTH VEGETABLES, INC. ("DSV"), DEFENDANT/COUNTERCLAIM PLAINTIFF J&J PRODUCE, INC. ("J&J"), and prospective DEFENDANT/COUNTERCLAIM PLAINTIFF BENSON HILL HOLDINGS, INC. ("BHH") hereby stipulate to the substitution of BHH as Defendant/Counterclaim Plaintiff in this matter, showing the Court as follows:

1.

On April 20, 2023, DSV filed its Complaint against J&J in the Superior Court of Clinch County, Georgia.

2.

On May 10, 2023, J&J was served with the Summons and Complaint.

3.

On June 6, 2023, J&J filed a Notice of Removal in this Court. [Doc. 1.]

4.

On June 23, 2023, J&J timely filed its Answer, Affirmative Defenses, and Counterclaims

[Doc. 9] pursuant to the stipulation entered into with DSV. [Doc. 4.]

5.

Prior to the June 30, 2023 closing of the transaction contemplated by the Stock Purchase Agreement (which agreement is described in Paragraph 6 below), BHH was a parent company of J&J.

6.

On December 29, 2022, BHH and Benson Hill Fresh, LLC (the other parent company of J&J) entered into a Stock Purchase Agreement pursuant to which an unrelated third party agreed to purchase 100% of J&J's equity securities from them, with closing of the Stock Purchase Agreement taking place on June 30, 2023.

7.

Pursuant to the terms of the Stock Purchase Agreement, certain Retained Assets and Liabilities as defined therein were not included with the sale of J&J's equity securities to the unrelated third party, but were assigned to BHH on June 30, 2023. A true and correct copy of the Assignment is attached hereto as Exhibit 1. Under the terms of the Stock Purchase Agreement, BHH also agreed to certain indemnity obligations. These Retained Assets and Liabilities that were assigned to BHH, and BHH's indemnity obligations, include the alleged liabilities asserted by DSV against J&J in this action and the counterclaims asserted by J&J against DSV in the pleadings filed in this action. [*See* Assignment ¶¶ 1 & 5.]

8.

Fed.R.Civ.P. 25(c) provides, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." "Rule 25(c) authorizes a substitution of parties after a transfer of interest has occurred." Virgo v. Riviera Beach Assocs., 30 F.3d 1350, 1358 (11th Cir.

1994). Fed.R.Civ.P. 25(c) applies to transfers of interest which occur after litigation is commenced, which is the case here. Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1407 (11th Cir. 1998).

9.

Under the terms of the Assignment, BHH and J&J have agreed to pursue the necessary steps to substitute BHH for J&J in this litigation. [Assignment ¶ 4.]

10.

DSV, through its counsel, has consented to the substitution of BHH for J&J as both Defendant and Counterclaim-Plaintiff in this action.

11.

Under these circumstances, the service requirements under Fed.R.Civ.P. 25(c) are unnecessary and are waived by DSV, J&J, and BHH.

12.

Accordingly, the parties request that BHH be substituted for J&J as Defendant/Counterclaim-Plaintiff in this action and that the caption of this case be amended to read as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DEEP SOUTH VEGETABLES, INC., ) | Case No. 7:23-cv-00069-WLS |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| BENSON HILL HOLDINGS, INC., ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |

Respectfully submitted this 25th day of July, 2023.

IT IS SO AGREED AND APPROVED AS TO FORM AND CONTENT:

**ELLIOTT BLACKBURN, PC**

*/s/ James R. Miller*
James R. Miller
Georgia Bar No. 159080
3016 North Patterson Street
Valdosta, Georgia 31602
(229) 242-3333
jmiller@elliottblackburn.com
*Attorney for J&J Produce, Inc. & Benson Hill Holdings, Inc.*

**McCARRON & DIESS**

*/s/ Kate Ellis*
Kate Ellis *(Admitted Pro Hac Vice)*
Washington, D.C. Bar No. 90007331
4530 Wisconsin Avenue N.W.
Suite 301
Washington, DC 20016
(202) 364-0400
kellis@mccarronlaw.com
*Attorney for J&J Produce, Inc. & Benson Hill Holdings, Inc.*

**COWART & PERRY, LLC**

*/s/ Zachary R. Cowart*
Zachary R. Cowart
Georgia Bar No. 191980
109 W. Adair Street
Valdosta, Georgia 31601
zcowart@cowartandperry.com
*Attorney for Deep South Vegetables, Inc.*

**MEUERS LAW FIRM, P.L.**

*/s/Steven M. De Falco*
Steven M. De Falco *(Admitted Pro Hac Vice)*
Florida Bar Number 0733571
5395 Park Central Court
Naples, FL 34109
(239) 513-9191
sdefalco@meuerslawfirm.com
*Attorney for Deep South Vegetables, Inc.*

**SO ORDERED**, this 1st day of August, 2023.

W. LOUIS SANDS, SENIOR JUDGE
UNITED STATES DISTRICT COURT

EXHIBIT 1

ASSIGNMENT

[Attached]

June 30, 2023

IMG Fresh, LLC
7836 Cherry Lake Road
Groveland, FL 34736
Attention: Melanie S. Ressler, President
Email: melanie@imgcitrus.com

*Re: Letter Agreement for Assignment of Claims to Benson Hill Holdings, Inc.*

Dear Ms. Ressler:

Reference is made to that certain Stock Purchase Agreement (the "Purchase Agreement"), dated as of December 29, 2022, by and among IMG Fresh, LLC, as a successor in interest to Sweet Sixty, LLC ("Buyer"), Benson Hill Fresh, LLC ("Seller"), and Benson Hill Holdings, Inc. ("Holdings"). Seller is the holder of record and beneficial owner of 100% of the issued and outstanding Equity Securities (the "Acquired Securities") of J&J Produce, Inc. ("J&J"), a Florida corporation. Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Purchase Agreement.

This letter will confirm our agreement that in connection with the Closing of the transactions contemplated under the Purchase Agreement, certain Retained Assets and Liabilities as defined therein are not included with the Acquired Companies as of Closing and are to be assigned to Holdings. These Retained Assets and Liabilities shall include all Actions, known or unknown, brought by or against any of the Acquired Companies that arises from or in connection with the Claims described in Schedule A attached hereto (the "Transferred Claims").

1. Seller, Holdings, J&J and Buyer agree that the Transferred Claims (a) are Retained Assets and Liabilities under the terms of the Purchase Agreement, and (b) are subject to the obligations of Seller and Holdings under Section 11.01 of the Purchase Agreement to indemnify Buyer Indemnified Parties for matters described therein, including but not limited to, Sections 11.01(g) and (h). Seller and Holdings represent and warrant to Buyer that as of the date hereof Section 5.04 of the Purchase Agreement is true and correct as of the date hereof other than those set forth on Schedule A attached hereto.

2. Seller, Holdings, J&J and Buyer agree that:

3. (a) until all Transferred Claims have been settled, dismissed, finally adjudicated or otherwise disposed of in a manner that results in absolutely no liability or potential for liability on the part of J&J or Buyer (the "Final Disposition"), the Escrow Amount shall not be released to Seller. The entire Escrow Amount shall continue to be held in the Escrow Account with the Escrow Agent until the Final Disposition. In the event the Final Disposition occurs prior to the dates for the release of the Escrow Amount as provided in Section 2.02(c) of the Purchase Agreement, the Escrow Amount shall be released in accordance with that section;

(b) Seller and Holdings further agree that Section 11.05(b) shall not apply to the Transferred Claims; and

(c) Section 11.05(c) of the Purchase Agreement is hereby amended to provide that amounts paid or incurred with respect to indemnification obligations of Seller and Holdings under this letter agreement shall not be amounts that are payable by the Escrow Agent from the Escrow Account.

4. To the extent permitted by the rules of civil procedure and governing law applicable to any Action, J&J will make an appropriate motion to the court to transfer interest in the Transferred Claims, including any liabilities, benefits and control of the litigation of such Transferred Claims to Holdings such that Holdings will be a substituted party for the applicable Acquired Company. Buyer and its Affiliates shall provide commercially reasonable assistance to assist J&J, Holdings and Seller in the filing of such motion. To the extent that court declines transfer interest in a Transferred Claim as described above, J&J shall remain the party in interest with respect to such Transferred Claim and Seller and Holdings shall assume responsibility for the Transferred Claim as a Third Person Claim in accordance with Section 11.06 of the Purchase Agreement. Seller, Holdings, J&J and Buyer agree to the extent necessary in the prosecution or defense of a Transferred Claim to enter into a joint defense agreement or common interest agreement pursuant to which the parties and their counsel agree to cooperate in preparing claims, defenses or positions relating to the Transferred Claims.

5. Subject to the terms of this letter agreement:

   (a) J&J and each of the other Acquired Companies hereby assign and transfer all of their right, title, remedies, and interest, whether arising in law or equity, in the Transferred Claims to Holdings. Holdings shall become vested with all rights, title, remedies, and interest in the Transferred Claims whether or not they are specifically referred to herein.

   (b) J&J and Buyer further agree that Holdings as assignee shall have all the rights and powers of the applicable Acquired Company as assignor with respect to the Transferred Claims. Such rights and powers shall include, but not be limited to, the assertion of claims, counterclaims, damages, and defenses available to J&J, Buyer or any of the Acquired Companies.

6. J&J and Buyer further agree to execute and deliver (or cause to be executed and delivered) such further instruments and take all such other actions as may be reasonably necessary in order to give effect to the intent of the foregoing, including providing all documentation reasonably requested by Holdings in order to enforce its rights under the terms of this letter agreement and in the Transferred Claims.

7. This letter agreement and any dispute arising out of or relating to or in connection with this letter agreement shall be governed by, and construed in accordance with, the Laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

8. Except as expressly set forth in this letter agreement, all of the other terms and conditions of the Purchase Agreement shall remain in full force and effect and enforceable against the parties thereto in accordance with their terms.

9. This letter agreement may be executed in two or more counterparts, each of which when executed will be deemed to be an original, and all of which together will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Parties. For purposes of this letter agreement, facsimile signatures or signatures by other electronic form of transfer (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law, e.g., www.docusign.com) will be deemed originals and deemed to have been duly and validly delivered and be valid and as effective as delivery of a manually executed counterpart hereof.

[Signature Page to Follow]

DocuSign Envelope ID: 7133F46B-C7FB-43AB-AE79-2E24D6AECBF7

Very truly yours,

| ASSIGNOR | ASSIGNEE |
|---|---|
| J&J PRODUCE INC., a Florida corporation, Assignee | BENSON HILL HOLDINGS, INC. |
| By: *Dean Freeman* (DocuSigned)<br>Name: Dean Freeman<br>Title: Chief Financial Officer | By: *Dean Freeman* (DocuSigned)<br>Name: Dean Freeman<br>Title: Chief Financial Officer |
| | BENSON HILL FRESH, LLC |
| | By: *Dean Freeman* (DocuSigned)<br>Name: Dean Freeman<br>Title: Chief Financial Officer |

Agreed and Acknowledged this
\_\_\_ day of _____, 2023:

IMG FRESH, LLC, a Florida limited liability company

By: _____
Name: Melanie Ressler
Title: President

cc:  WhiteBird, PLLC
     2101 Waverly Place, Suite 100
     Melbourne, FL 32901
     Attention: Bradley F. White, Esq.
     Email: bwhite@whitebirdlaw.com

DocuSign Envelope ID: EDC553F7-61C8-44C4-82C3-6E933FFF3BEA

Very truly yours,

| ASSIGNOR | ASSIGNEE |
|---|---|
| J&J PRODUCE INC., a Florida corporation, Assignee<br><br>By: _____<br>Name:<br>Title: | BENSON HILL HOLDINGS, INC.<br><br>By: _____<br>Name: Dean Freeman<br>Title: Chief Financial Officer<br><br><br>BENSON HILL FRESH, LLC<br><br>By: _____<br>Name:<br>Title: |

Agreed and Acknowledged this
30th day of June, 2023:


IMG FRESH, LLC, a Florida limited liability company

By: *Melanie Ressler* (DocuSigned)
Name: Melanie Ressler
Title: President

cc:   WhiteBird, PLLC
      2101 Waverly Place, Suite 100
      Melbourne, FL 32901
      Attention: Bradley F. White, Esq.
      Email: bwhite@whitebirdlaw.com

## Schedule A – Claims

1. Deep South Vegetables, Inc. v. J&J Produce, Inc., Case No. 23-cv-00069-WLS (M.D.Ga. filed June 6, 2023) - J&J and Deep South Vegetables, Inc. ("DSV") entered into that certain Grower's Marketing Agreement in March 2021, under which J&J marketed and sold produce delivered by DSV, remitted net proceeds from the sale of such product, and provided services and other goods for the benefit of DSV. DSV filed suit asserting claims against J&J in Clinch County, Georgia, and J&J has defenses and counterclaims to assert against DSV. The lawsuit was subsequently removed to the Middle District of Georgia.

2. Any Actions J&J may have against EDR Farms, LLC ("EDR") for breach of that certain Grower's Marketing Agreement dated May 13, 2020, as amended (the "EDR Marketing Agreement"). – J&J and EDR entered into the EDR Marketing Agreement. Additionally, J&J, Eugene Devane Ritter, Sr., and Little River Produce, LLC ("Little River") also entered into certain ancillary oral agreements related to the EDR Agreement (the "Little River Ancillary Agreements", together with the EDR Marketing Agreement, the "EDR Agreements"). Under the EDR Marketing Agreement, EDR is obligated to repay J&J Funds Advances, as defined in Paragraph 4.7 of the EDR Marketing Agreement, in the amount of $382,263.00. Little River alleges J&J owes $34,372.00 to Little River for pallets and freight under the Little River Ancillary Agreement. J&J owes EDR $100,814.00 for EDR's produce that J&J marketed and sold on EDR's behalf under the Marketing Agreement.